NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4028-15T1

REGINA TASCA,

        Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

        Respondent-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 28, 2019**
>
> **APPELLATE DIVISION**

Argued November 26, 2018 – Decided January 28, 2019

Before Judges Sabatino, Sumners and Mitterhoff.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, PFRS No. 3-91517.

Catherine M. Elston argued the cause for appellant (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

Danielle P. Schimmel, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jeff S. Ignatowitz, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SUMNERS, J.A.D.

Petitioner Regina Tasca appeals the final agency decision of the Board of Trustees (Board), Police and Firemen's Retirement System (PFRS), denying her twenty-year service (early) retirement pension benefits under N.J.S.A. 43:16A-5(3), because she was not a PFRS member at the time of the statute's January 18, 2000 effective date. Tasca claimed that her transfer of six years of service credit, which she earned prior to her PFRS enrollment in February 2001, to her PFRS account resulted in service credit that exceeded the twenty-year threshold needed for early retirement. Alternatively, she argues that, even if she was not a PFRS member on the statute's effective date, she was entitled to early retirement pension benefits through the doctrine of equitable estoppel because she retired based on representations by the PFRS staff that her purchased service credit qualified her for the benefits. Tasca also claims that her early retirement was part of her settlement with her former employer in a Law Division action, and because public policy favors settlement of litigation, she should receive the early retirement pension benefits that she and her former employer believed in good faith she was eligible to receive.

We disagree with appellant, and affirm because the Board properly interpreted N.J.S.A. 43:16A-5(3) in determining that since she was not a PFRS member at the critical time of the statute's effective date, she was ineligible for early retirement despite her transferred service credit. We also conclude that

equitable estoppel does not afford Tasca relief against a governmental body, such as the Board, and there was no misrepresentation by the PFRS staff that she was eligible for retirement under N.J.S.A. 43:16A-5(3).  We further conclude that public policy favoring settlements against parties who have entered into them serves no basis for granting her early retirement benefits in this matter.

I

Tasca was employed as a special police officer with the Borough of Fairview from January 1, 1995, until she resigned on January 24, 2001.  During that period, she was enrolled in the Public Employees Retirement System (PERS).  Upon joining the Bogota Police Department as a patrol officer on February 1, 2001, she transferred her service credit from PERS to PFRS, a different pension program.  She thus received a certification of payroll deductions from PFRS, listing a January 1, 1995 "date of enrollment," encompassing eighty-one months of prior service.

Starting in May 2011, a little over ten years after joining the Bogota police force, Tasca became embroiled in a series of disciplinary actions.  This eventually led to her termination in September 2012, which was effective October 18, 2012.  Approximately five months before her termination, she filed a federal lawsuit in April 2012, against Bogota and members of its police

3

department, alleging violations of her rights under the Law Against Discrimination, N.J.S.A. 10:5-1 to -42, the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14, and the First Amendment. After her termination, she amended the complaint to add Bogota's mayor and some of its council members as defendants.

Adding to the parties' litigation, Bogota filed a complaint in the Law Division in December 2012, seeking a refund of the salary Tasca received while she was under suspension. Tasca, in turn, dismissed her federal action and incorporated the claims asserted therein as counterclaims[1] in the Law Division matter.[2]

After the completion of discovery, Tasca was granted partial summary judgment in May 2015, invalidating both her suspension from May 18, 2011, to May 28, 2015, and her termination in October 2012, on the basis that the disciplinary actions "were the product of multiple conflict[s] of interest[]."

---

[1] In particular, Tasca alleged inappropriate overtime pay denials; harassment by fellow officers; failure of fellow officers to assist and provide backup; threatened perjury; vandalism; threatened retaliation; failure to promote; and unwarranted requests for psychiatric examinations.

[2] Bogota's disciplinary charges and Tasca's counterclaims are detailed in our unpublished decision in Borough of Bogota v. Tasca, No. A-0438-14 (App. Div. Apr. 27, 2015), where another panel of this court affirmed the trial court's order that a trial de novo of the charges against Tasca should be tried with the jury trial on her counterclaims.

A-4028-15T1

Tasca was awarded back pay and immediate reinstatement to employment, although not on active duty.

In November 2015, the entire litigation was settled. All claims and pending disciplinary actions were dismissed, with Tasca receiving $2.25 million from Bogota.[3] Pertinent to this matter, it was agreed by the parties to the settlement that Tasca "shall remain a police officer and employee of Bogota on its payroll, and shall maintain all seniority and benefits, until the effective date of her retirement," in good standing, to take effect on December 31, 2015. In furtherance of her retirement, Bogota was required to

> take whatever steps are necessary and/or required to effectuate Officer Tasca's PFRS pension with all reasonable diligence, including but not limited to supporting Officer Tasca's application for a pension on a service retirement, submitting any and all information or documents required by PFRS, and fulfilling any other requirements of or requests from PFRS.

Before agreeing to the settlement, Tasca confirmed online that she had at least twenty years' service time in PFRS, which led her to believe she was eligible for early retirement pension benefits. She also claimed that she met

---

[3] The settlement payment was itemized as follows: $250,000 to Tasca; $850,000 to fund an annuity for Tasca; $935,000 to Tasca's attorneys; $200,000 to Sedgwick CMS; and $15,000 to a physician expert.

A-4028-15T1

with a PFRS counselor, who advised she was eligible for early retirement pension benefits and could file an application online.

A problem, however, arose prior to finalizing the settlement. When she was unable to apply for early retirement pension benefits online, Tasca contacted PFRS on December 14, 2015. She claimed that a PFRS counselor indicated she should be able to apply for benefits because she had the necessary twenty years' service in PFRS. However, after checking with a supervisor, the counselor advised her – which is confirmed in a PFRS contact log – that she was ineligible for early retirement pension benefits because she was not a PFRS member on January 18, 2000. The service time added to her account from her Fairview employment was transferred in 2001, and would not qualify her for early retirement. She was further advised that she could not receive pension benefits until she reached fifty-five years of age.[4] See N.J.S.A. 43:16A-5(1). Tasca then refused to sign the settlement agreement.

In response to Tasca's desire to back out of the settlement, the trial court granted Bogota's request for a hearing to determine if the settlement agreement was enforceable. Following argument, the court issued an order on December 23, 2015, finding the parties reached a binding agreement, thereby rejecting Tasca's claim that the settlement was void because of the parties' "mutual

---

[4] Tasca, born in September 1966, was forty-nine years old at the time.

mistake" that she was eligible for early retirement pension benefits. Six days later, Tasca signed the agreement as directed by the court. She did not appeal, or seek a stay of, the court's ruling enforcing the settlement agreement.

Two weeks after being advised she was not eligible for early retirement pension benefits, Tasca, together with Bogota, sought to reverse the PFRS determination. They jointly submitted a letter brief, supported by certifications from Tasca and her counsel, to the Division of Pensions and Benefits (Division) claiming that she was entitled to early retirement pension benefits. They argued that because the effective date of her PFRS enrollment was January 1, 1995, based on the time she carried over from PERS, she had the requisite twenty years' service as a PFRS member to be eligible for early retirement pension benefits. They also contended that equitable estoppel principles warranted approval of Tasca's application for early retirement based on representations made over the course of fifteen years prior to the settlement by PFRS counselors and in her PFRS benefits statements that she has been enrolled in PFRS since January 1, 1995. Lastly, they argued that denying her early retirement pension benefits undermines the public policy favoring settlements because the settlement agreement was based on their good faith belief that she was eligible for early retirement pension benefits due to the aforesaid enrollment date and prior representations.

The Division concluded Tasca was not eligible for early retirement pension benefits because she did not meet the eligibility requirements under N.J.S.A. 43:16A-5(3). Even though on February 1, 2001, she transferred service time from PERS that gave her a PFRS enrollment date of January 1, 1995, she was not a "member" of PFRS on January 18, 2000, as is expressly required by the statute. The Division added that there was no record of it, or a staff member, notifying her that she was eligible for early retirement benefits. Tasca appealed the decision to the Board.

The Board affirmed the Division's denial of early retirement pension benefits to Tasca for the same reasons. In rejecting Tasca's equitable estoppel argument, the Board noted:

> [Tasca] argues that the enrollment date on her annual statements led her to believe that she was a member on the effective date of [P.L.] 1999, c. 428. Further, she claims to have received multiple assurances during contacts with Division staff that she did qualify for Service retirement benefits. However, the Board notes that Division contact records do not indicate a discussion with the member about eligibility for Service retirement benefits until December 14, 2015, two weeks before she signed the settlement agreement. Realizing she did not qualify for Service retirement benefits at that time, the Board notes that . . . Tasca raised the issue with the [c]ourt seeking to amend her agreement with Bogota. The record shows the [c]ourt enforced the agreement as negotiated, noting that . . . Tasca was responsible for knowing her benefits while in negotiations. As a further note, there is also no record that . . . Tasca inquired concerning her

A-4028-15T1

> enrollment date. On this basis, the Board finds there is no basis to grant her request for Service retirement benefits based on issues of equitable estoppel.

The Board further concluded that it was not bound by Tasca and Bogota's settlement agreement because it was not a party to the agreement and that it could not grant benefits that are contrary to law. This appeal ensued.

## II

Tasca raises the same arguments before us that the Board rejected. She first contends that the Board misinterpreted N.J.S.A. 43:16A-5(3) to deny her early retirement pension benefits through her PFRS membership. In particular, she maintains that she satisfied the twenty-year service time element to be eligible for the benefits, pointing to her PFRS personal benefit statements, which provide that her PFRS enrollment date is January 1, 1995, the controlling date for calculating whether she has sufficient time to be eligible.

It is long established that we "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007). "Such deference has been specifically extended to state agencies that administer pension statutes" because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys.,

443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).  Nevertheless, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'"  Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).  Thus, our review of a question of law is de novo. Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 419 (2018).

The primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'"  State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We initially consider "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'"  Ibid.  "We will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit."  Tumpson v. Farina, 218 N.J. 450, 467-68 (2014) (citing DiProspero v. Penn, 183 N.J. 477, 493 (2005)).  When we do not conclude that the "plain reading of the statutory language is ambiguous, . . . or leads to an absurd result," we refrain from looking at "extrinsic evidence, such as legislative history, committee reports, and contemporaneous construction in search of the

10

Legislature's intent." Tumpson, 218 N.J. at 468 (citing DiProspero, 183 N.J. at 492-93).

A.

Tasca sought PFRS early retirement pension benefits under N.J.S.A. 43:16A-5(3), which, in relevant part, provides:

> Any member of the retirement system as of the effective date of P.L. 1999, c. 428 who has 20 or more years of creditable service at the time of retirement shall be entitled to receive a retirement allowance equal to 50% of the member's final compensation . . . .
>
> [(emphasis added).]

The effective date of the statute is January 18, 2000. L. 1999, c. 428, § 2. Plainly and clearly stated, to be eligible for early retirement benefits under the statute, a PFRS member must: (1) have been a "member of the retirement system" as of January 18, 2000; and (2) have at least twenty years of "creditable service" upon retirement.

Tasca satisfied the service time through her transfer of time from her PERS membership while employed by Fairview. "Creditable service" is not limited to employment offering membership in PFRS but includes any service "as a policeman or fireman" paid for by "the State of New Jersey, the county, municipality or political subdivision." N.J.S.A. 43:16A-1(6) to (8); N.J.S.A. 43:16A-4. Tasca transferred funds from the PERS to the PFRS and "receive[d]

11

full credit toward benefits under PFRS for the transferred PERS service credit." N.J.S.A. 43:16A-3.10(b); N.J.S.A. 43:16A-3.14. Her personal benefit statement reflected twenty-one years and five months pension service credit as of September 30, 2015.

On the other hand, Tasca falls short of satisfying the requirement of being a PFRS member on January 18, 2000. A "member" is defined as "any policeman or fireman included in the membership of the retirement system." N.J.S.A. 43:16A-1(3). "Retirement system" refers only to the "Police and Firemen's Retirement System of New Jersey." N.J.S.A. 43:16A-1(1). Tasca did not become a PFRS member until February 1, 2001, when she joined the Bogota police force. This occurred over a year after the statute's January 18, 2000 effective date.

Tasca mistakenly conflates her PFRS enrollment date of January 1, 1995, with the date she became a PFRS member on February 1, 2001. Her enrollment date is backdated before the actual date she joined PFRS due to the service time transferred from PERS to PFRS allowed by law. N.J.A.C. 17:2-7.1(b)(7) ("The member's original enrollment date established in the former system shall be transferred into the new system."). However, the early retirement pension benefits statute, N.J.S.A. 43:16A-5(3), specifically requires

that an individual must be a "member" of PFRS on the pivotal date of January 18, 2000, without reference to the individual's "enrollment date."

From our vantage point, it is obvious that the Legislature chose not to use the term "enrollment date" as the trigger for determining eligibility for early retirement pension benefits. N.J.S.A. 43:16A-5(3) states that an individual must be a member of PFRS on January 18, 2000, to qualify for early retirement pension benefits. We have no doubt that the Legislature was familiar with the ability of a person to purchase and transfer time from another pension system to his or her PFRS membership, as noted above. The Legislature unambiguously limited the class of PFRS members who are eligible to take advantage of early retirement pension benefits, perhaps for fiscal or budgetary reasons. Thus, we discern no reason to read the statute contrary to its plain and clear meaning that a person had to be a PFRS member on January 18, 2000, to be eligible for early retirement service pension benefits.

Accordingly, we conclude the Board's interpretation of the statute was not arbitrary, capricious, or unreasonable, and did not violate legislative policies. See Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Tasca therefore cannot take advantage of the early retirement pension benefits afforded by N.J.S.A. 43:16A-5(3).

B.

In the alternative, Tasca raises two arguments. One, the doctrine of equitable estoppel should apply to require that PFRS approve her early retirement pension benefits because she retired from Bogota due to misrepresentations by PFRS as to her eligibility for the benefits. Two, public policy favors settlement of litigation, and, thus, she should receive the early retirement pension benefits that she and Bogota believed in good faith she was eligible to receive. We address the arguments in the order raised.

In support of her equitable estoppel argument, Tasca maintains that the annual PFRS benefits statements she received over a fourteen-year period stated her enrollment date was January 1, 1995. The 2015 statement reflects she has twenty-one years and five months of "Total Pension Service Credit." She also points to an unscheduled walk-in interview with a PFRS counselor, who advised she would have twenty years of service as of May 1, 2014. In September 2015, a PFRS counselor advised that her account would be credited with an additional thirty-two months, presumably in connection with her lawsuit against Bogota.[5] She asserts she would have remained on the Bogota

---

[5] Tasca, as well as her counsel, had telephone contacts with PFRS concerning the impact of her settlement on her pension calculations based upon her back pay award. Those communications have no bearing on her legal eligibility for early retirement pension benefits.

police force had she been aware she was not eligible for the early retirement pension benefits since she would have been eligible for a twenty-five year pension after an additional three years of service.

In applying equitable estoppel, our Supreme Court in Knorr v. Smeal, 178 N.J. 169 (2003), explained the doctrine is:

> "founded in the fundamental duty of fair dealing imposed by law." [It] is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his [or her] detriment. . . . Estoppel, unlike waiver, requires the reliance of one party on another. In short, to establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment.
>
> [Id. at 178 (citations omitted).]

"'The essential principle of the policy of estoppel . . . is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct.'" Middletown Twp. Policeman's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04 (1955)). There need not be evidence of fraudulent intent for equitable estoppel to apply. Hendry v. Hendry, 339 N.J. Super. 326, 336 (App. Div. 2001). Of added significance here, equitable estoppel is "rarely invoked

against a governmental entity, . . . . Nonetheless, equitable considerations are relevant to assessing governmental conduct, and may be invoked to prevent manifest injustice." In re Johnson, 215 N.J. 366, 378-79 (2013) (quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 316-17 (1987) (citations omitted)).

Applying these principles, we discern no reason to upset the Board's decision to deny Tasca's early retirement pension benefits based upon her assertion of equitable estoppel. Although the Board did not specifically analyze the doctrine, it found there was no factual basis to support Tasca's assertion that she was misled into believing she was eligible for an early retirement pension. We are mindful that, while Tasca's contacts with PFRS are contested facts and the Board decided her claim without a fact-finding hearing, even accepting her assertions as true, the record fails to reflect she was lead to believe by PFRS that she was eligible for the sought after pension benefits. Even accepting her claim that a PFRS counselor told her she was eligible for the benefits cannot bind the Board. Tasca can point to no award or official correspondence by the Division or the Board stating that she was eligible for an early retirement pension.

Furthermore, considering the disfavor of applying equitable estoppel against a governmental agency, Tasca has not established that denying her pension constitutes a manifest injustice. She and Bogota reached a settlement

agreement fully aware that it was up to the Division, or ultimately the Board, to determine if she was eligible for early retirement pension benefits. For reasons that are not evident in the record, the agreement was not subject to her obtaining the benefits. Moreover, as noted, N.J.S.A. 43:16A-5(3) unambiguously states a person must be a member of PFRS on January 18, 2000, to be eligible for the benefits – which she clearly was not.

Tasca likens her situation to pension disputes that occurred in several cases, none of which support her position that equitable estoppel should be applied here. In Skulski v. Nolan, 68 N.J. 179, 189-190 (1975), the Court reversed the Appellate Division and remanded to the trial court so that pensioners, who were previously granted disability pension benefits that were discontinued by a court-appointed receiver for a county Pension Commission, could present proofs to warrant reinstatement of their pensions. The Court ordered that the pensioners be allowed to show their subjective good faith belief in entitlement to benefits, and that their reliance on an initial pension award foreclosed alternate pension benefits. Id. at 199-200.

In Galvano v. Board of Trustees of the Public Employees' Retirement System, 225 N.J. Super. 388, 390-92 (App. Div. 1988), after the appellant received a letter from the Division approving his veteran's retirement benefits and retired from his job, the Division advised him that he was ineligible for the

17                                                                    A-4028-15T1

benefits because he did not meet the requisite age requirement. He consequently was precluded from seeking alternative public employment to allow him to work until reaching the required age. Id. at 396. We remanded for further factual findings to determine whether equitable principles[6] would mandate reversal without relying per se on a theory of equitable estoppel. Id. at 398.

In Sellers v. Board of Trustees of the Police & Firemen's Retirement System, 399 N.J. Super. 51 (App. Div. 2008), the Board initially approved the appellant's enrollment in PFRS as a firefighter. Id. at 54. However, the Board subsequently reversed his enrollment due to his age even though both he and the Township held the mistaken belief that his age would be adjusted based on his service in the military and as a police officer. Id. at 52-53. We reversed and remanded so that the Board could determine "whether the facts warrant application of equitable principles." Id. at 63. We ruled, "[p]rinciples of equitable estoppel do not neatly fit the facts of this case" when the appellant seeks to bind the Board, a State entity, for action taken by a municipality. Id. at 58-59.

---

[6] The appellant was permitted to present proofs that he would have been able to continue working on light duty had he been timely advised of the age requirement for his desired pension. Galvano, 225 N.J. Super. at 398.

Unlike the appellants in those cases, Tasca was not granted pension benefits or led to believe by the approving authority that she was entitled to early retirement pension benefits. Rather, here, it was clear that she was not entitled to such benefits because she was not a PFRS member when the authorizing statute took effect. In addition, there is no proof that she is precluded from pension benefits in the future, as she is entitled to benefits upon turning fifty-five years old.

Tasca's remaining argument is that she is entitled to early retirement benefits because it was part of her litigation settlement with Bogota based on good faith reliance on PFRS's representation, and public policy favors settlement. This argument does not merit much attention.

The trial court ordered that the settlement was binding to the parties despite Tasca being told she was not eligible for early retirement pension benefits. Because that order was not appealed and remains in effect, the public policy favoring settlements has been maintained. See Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (quoting Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961)) ("Fundamental to our jurisprudence relating to settlements is the principle that '[t]he settlement of litigation ranks high in our public policy.'" (alteration in original)). Moreover, as the Board correctly stated, it was not a party to the trial court litigation and, consequently, it did

not agree that Tasca was entitled to early retirement pension benefits under N.J.S.A. 43:16A-5(3). Hence, our public policy of enforcing settlements against parties who have entered into them is of no import in this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4028-15T1