**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0655-18T2

IN THE MATTER OF THE
ESTATE OF RUTH L. STUMM,

    Deceased.

_____

Submitted September 9, 2019 – Decided September 24, 2019

Before Judges Sabatino, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. P-216841.

Castano Quigley LLC, attorneys for appellants The Presbytery of the Palisades and the Presbyterian Church U.S.A. (Gregory Joseph Castano, Jr., on the brief).

Fraioli & Moore, attorneys for respondent The Estate of Ruth L. Stumm (Ronald M. Fraioli, on the brief).

Randall & Randall, LLC, attorneys for respondents The First Presbyterian Church of Moonachie, The United Presbyterian Church of Lyndhurst, and The Bergen Church Council (Steven Mark Paul, on the brief).

PER CURIAM

This appeal by The Presbytery of the Palisades and the Presbyterian Church, U.S.A. Estate (collectively the Presbytery), asks us to determine whether Judge Thomas J. LaConte, following a bench trial, erred in failing to apply N.J.S.A. 16:11-23 and ordering that the twelve and one-half percent share of the residuary estate that decedent Ruth Stumm bequest to the First Presbyterian Church of Wood-Ridge (Church of Wood-Ridge) or its successor to "establish an endowment in the name of Gustave Herre[,]" should go to the Presbytery rather than a local church, the First Presbyterian Church of Moonachie (Church of Moonachie).

We affirm because it was appropriate for the judge to determine based upon his assessment of witnesses' credibility, that it was Stumm's intent that her bequest go to the Church of Moonachie, which became the place of worship for congregates of the dissolved Church of Wood-Ridge. We further agree with the judge that N.J.S.A. 16:11-23, which gives the Presbytery survivorship rights to the assets of local churches within its denomination, does not apply because the Church of Wood-Ridge dissolved four years after Stumm's will was written and two years prior to her death.

Stumm was a member of the Church of Wood-Ridge throughout most of her ninety-six years of life. Her last will and testament, prepared by attorney Mark T. Janeczko, was executed on December 17, 2010. Relevant to this appeal, paragraph five, subsection (b), of the residuary clause of her will, provides "[twelve and one-half percent] (12.5%) unto the [Wood-Ridge church] or its successor to establish an endowment in the name of Gustave Herre."

On June 15, 2015, Stumm was declared mentally incapacitated and Scott Schmidig was appointed as one of her co-guardians. Less than a year later, she died on April 4, 2016. On April 28, 2016, her last will and testament was probated and the Bergen County Surrogate issued letters of testamentary to Schmidig.

Because the Church of Wood-Ridge had been formally dissolved on April 8, 2014, two years before Stumm's death, Schmidig filed a verified complaint seeking "instructions from the [c]ourt with regard to the distribution of the [twelve and one-half percent] of the residuary estate that was to pass to the [Wood-Ridge church] or its successor under Paragraph [five](b) of the will." In turn, the Presbytery, the Church of Moonachie, and the United Presbyterian Church of Lyndhurst (Church of Lyndhurst) claimed they were the successors

of the Church of Wood-Ridge's assets and, therefore, entitled to the twelve and one-half percent of the residuary estate bequest to the Church of Wood-Ridge in Stumm's will.[1]

A three-day bench trial followed, in which six witnesses testified, including Schmidig and Janeczko.[2] As an example of Stumm's interest in the neighboring Wood-Ridge and Moonachie communities, Schmidig stated that some of the residuary estate went to the Wood-Ridge Memorial Library, due to Stumm's part-time employment and volunteer service with the library, and the Wood-Ridge Memorial Foundation, which provides college scholarships to seniors from Wood-Ridge and Moonachie who graduate from Wood-Ridge High School.

As for Stumm's church involvement, Schmidig testified that Stumm served as a member of the Board of Elders, called the "Session" of the Church of Wood-Ridge, throughout her adult life, and she attended combined Session meetings of the South Bergen Larger Parish churches, comprised of the Church

---

[1] The Office of the Attorney General advised the trial court that it took no position in the dispute "[b]ecause this case poses a potential conflict between charities, because all charities are on notice of this proceeding, and because the [d]ecedent's charitable gift will be made upon direction of this [c]ourt[.]".

[2] Janeczko was a Judge of the Superior Court at the time of his testimony.

A-0655-18T2

of Wood-Ridge, the Church of Lyndhurst, and the Church of Moonachie. According to Schmidig: "[Stumm] said to me that if she's giving money to a church she wanted it to be used as it was supposed to be used for, for mission . . . for church work, . . . for local help, local members or whether it's the hot lunch program, something like that . . . she wanted it to be used locally." Schmidig also claimed that Stumm was agitated in expressing displeasure with the fact that local churches had to give per capita funds contributed to their congregation to the Presbytery. In fact, he claimed to have overheard Stumm tell a neighbor, "I don't want The Presbytery to get any of my money."

In a similar vein, Janeczko testified that the words "or its successor" in paragraph five, subsection (b), were chosen to mean a local church because their members would know who Gustave Herre was. Janeczko stated that Stumm specifically agreed with his choice of the phrase "or its successor" in the will to express her intent that the words refer to the local church to which congregants of a potentially dissolved Church of Wood-Ridge would go to worship; thus, her residuary estate bequest would follow those congregants. He stressed that Stumm never mentioned the Presbytery receiving any share of her estate when he consulted her concerning the drafting of her will.

Pastor Samuel Weddington of the Church of Moonachie testified that some of the congregants of the former Wood-Ridge church transferred to his church. Pastor Weddington and his team also visited Stumm and other "homebound" former Wood-Ridge Church members to provide spiritual support after their church closed. Pastor Weddington also performed Stumm's funeral service.

The Presbytery contended that under N.J.S.A. 16:11-23, it is entitled to the Church of Wood-Ridge's share of Stumm's estate because it is the successor to the dissolved church's assets. The Presbytery maintained further that Stumm knew it was the successor to the local church and she could have changed her will after the local church was dissolved if that was her intent.

After reserving decision, Judge LaConte entered an order supported by a twenty-page findings of fact and conclusion of law that the Church of Moonachie was entitled to the twelve and one-half percent share of Stumm's residuary estate as the successor of the Church of Wood-Ridge. The judge found that the circumstances and evidence indicated that Stumm's "probable intent is that [the] endowment [for her late uncle] should go to a local church." The judge reasoned:

> There is no language in the [w]ill which would indicate that Ruth Stumm had the Presbytery in mind with

6

regard to a successor of her local church. Such a change would not be allowed for assets governed by the statute. The Presbytery argues that Ms. Stumm knew that it was 'the successor' to the [c]hurch and could have changed her [w]ill if it no longer reflected her intent. The [c]ourt disagrees with the stated premise and notes that on the date of the Certificate of Dissolution, April 8, 2014, Ruth Stumm was 94 years of age, one year from when she was declared an incapacitated person by the . . . [c]ourt . . . on June 15, 2015. This court concludes that Ruth Stumm's probable intent is that its successor would be a local church.

In addition, the judge set forth ten reasons why N.J.S.A. 16:11-23 did not confer the status of successor on the Presbytery to benefit from the dissolution of the Church of Wood-Ridge. The judge determined:

The statute does not apply to the inheritance in the present case because:

1. The statute says that it only pertains to assets to which the local church had "the right title and interest". While it was in existence, the local church did not have the 'right, title and interest' to Ruth Stumm's assets.

2. Paragraph [five] of the Certificate of Dissolution of THE TRUSTEES OF FIRST PRESBYTERIAN SOCIETY OF WOOD-RIDGE states: "Pursuant to the Constitution of the Presbyterian Church (U.S.A.) and Title 16 of the New Jersey Statutes, the corporation has dissolved and assets and liabilities of the corporation have been transferred to the Trustees of the Presbytery of the Palisades". . . . According to these records all of the assets have already been transferred. Ruth Stumm's estate assets were never assets of the Trustees of The First Presbyterian Society of Wood-Ridge. They are

7

not among the assets that were transferred at the time that the local church was dissolved. The local church corporation did not exist after April 8, 2014. Ruth Stumm continued to live until April 4, 2016.

3. The statute provides that the only property that transfers from the board of trustees of the local church or persons or body holding the same in trust for the particular local church and congregation are the assets which were "vested in" the board of trustees of the local church when it was dissolved. None of the assets of Ruth Stumm's estate were ever "vested in" the board of the trustees of the local church or any local church body.

4. The [s]tatute uses the words "shall thereupon vest" to refer to the time that assets of a local church pass to the Presbytery. The devise under Paragraph [five] (b) of Ruth Stumm's will did not exist on April 8, 2014. It had not yet come into being and could not 'thereupon vest' in the Presbytery at that time.

5. The property which the statute provides for a transfer of is limited to: "all the real and personal property of the particular local church and of the congregation connected therewith". A future inheritance is not included within the limited statutory categories of "real or personal property." Words of bequest in a will are not real or personal property.

6. The words of the statute refer only to assets in being at the time of the dissolution of the local church. The [s]tatute only governs assets that are held by the particular local church at a fixed time which the [s]tatute defines as: "When any Presbytery . . . dissolves any particular local church." The [s]tatute does not pertain to any future time. The [s]tatute does not refer

to a future inheritance from a person who dies two years after the dissolution of the local church.

7. The [s]tatute refers to assets which are "held by" an incorporated board of trustees or otherwise of the particular local church and of the congregation. The devise under Paragraph [five] (b) of Ruth Stumm's will was never "held by" the particular Wood-Ridge church or congregation.

8. The Certificate of Dissolution of The Trustees of First Presbyterian Society of Wood-Ridge dated April 8, 2014 states: "Pursuant to the Constitution of the Presbyterian Church (U.S.A.) and Title Sixteen of the New Jersey Statutes, the Corporation has Dissolved and assets and liabilities of the Corporation have been transferred to The Trustees of the Presbytery of the Palisades as set forth in the Plan of Dissolution attached". The words "have been transferred" refer to something that happened in the past, not to a future interest. The transfers of assets from the local church corporation to the Presbytery had been concluded by the April 8, 2014 dissolution.

9. N.J.S.A. 16:11-23 is limited to Presbyteries that are incorporated only. The statute says that the real and personal property of the local church when it is closed: "shall thereupon vest in the trustees of such Presbytery, provided the trustees are incorporated". The application of this statute requires proof that the Trustees of the Presbytery of the Palisades were incorporated. There was no testimony at trial regarding incorporation of the Presbytery. No proof was offered by the Presbytery to show that its trustees are incorporated.

10. The Certificate of Dissolution is signed by The Trustees of the Presbytery of the Palisades "as statutory

A-0655-18T2

successor" to The Trustees of The First Presbyterian Society of Wood-Ridge. This means that The Trustees of the Presbytery of the Palisades (if incorporated) is the "statutory successor" of that local church corporation and its assets only and not "statutory successor" of any of Ruth Stumm's assets.

## II

Before us, The Presbytery argues that the judge improperly conducted a trial to determine Stumm's "probable intent" and evaluated extrinsic evidence rather than reading the plain and unambiguous language of her will. In addition, it further argues the trial court's decision is inconsistent with N.J.S.A. 16:11-23. We are unpersuaded.

Normally, "[t]he intention of a testator as expressed in [the] will controls the legal effect of . . . dispositions, and the rules of construction . . . shall apply unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary." N.J.S.A. 3B:3-33.1(a). The doctrine of probable intent is "a rule of construction or interpretation." In re Estate of Flood, 417 N.J. Super. 378, 382 (App. Div. 2010). The doctrine can take two forms: interpretation and reformation. In re Trust of Nelson, 454 N.J. Super. 151, 159 (App. Div. 2018). Interpretation, which is the issue here, involves ascertaining the "meaning of language already in the instrument." Ibid. (quoting Uniform Trust Code, cmt. § 415 (2000)). In cases of interpretation, the testator's probable

10

intent need only be proved by a preponderance of the evidence. Id. at 160. Where there is an ambiguity in the will, the testator's intent is a fact issue. Id. at 161 (citing Michaels v. Brookchester, Inc., 26 N.J. 379, 387-88 (1958)).

Given that the Church of Wood-Ridge did not exist at the time of Stumm's death, her will is not clear as to who is the successor to "establish an endowment in the name of Gustave Herre." Thus, there is a question of fact as to the entity that is entitled to manage the endowment.

The principles set forth by In re Trust of Nelson, provided that a trial judge is permitted to look beyond the plain language of a trust in order to ascertain the decedent's intended meaning. 454 N.J. Super. at 161-63. There, the decedent left property in a trust to her "grandchildren." Id. at 154. The trustee sought a declaratory judgment regarding the interpretation of the term "grandchildren" as it was used in the trust. Ibid. The trustee put forth extrinsic evidence that the decedent intended only the children of her sons, who followed decedent's religious beliefs, to share in the trust. Id. at 155. The trustee proffered evidence indicating that because the decedent had a strained relationship with her daughter, the decedent did not consider her daughter's children to be her grandchildren, and thus, did not intend for them to share in the trust. Ibid. The judge declined to consider the extrinsic evidence, determining that the trust must

11

be construed according to its plain, unambiguous terms. Id. at 156. The judge cited to In re Estate of Gabrellian, 372 N.J. Super. 432, 443 (App. Div. 2004), which states that the doctrine of probable intent "is not applicable where the documents are clear on their face and there is no failure of any bequest or provision." 454 N.J. Super at 156, 163. The judge acknowledged that if he were permitted to examine evidence beyond the four corners of the document, there would have been a genuine issue of material fact precluding summary judgment. Id. at 156.

In our decision, written by Judge Mitchel Ostrer, we reversed the trial judge's entry of summary judgment and remanded for a new trial, finding that the trial court improperly "confined itself to the words found within the four corners of the trust." Id. at 154. Applying the doctrine of probable intent, we stated that a trial court may look beyond the apparently plain language of a trust and consider extrinsic evidence of the decedent's intent in order to discern whether an ambiguity exists and how to resolve any such ambiguity. Id. at 158-9. The court explicitly declined to follow In re Estate of Gabrellian, finding that the trial judge should have considered extrinsic evidence regarding the decedent's probable intent when it came to the meaning of the term "grandchildren." Id. at 163. The court determined that the trustee had proffered

extrinsic evidence that the term "grandchildren," as it was used in the trust, was ambiguous. Id. at 165. Having established ambiguity, the court remanded the case so the trustee could present extrinsic evidence to show the trust should be interpreted to give effect to its meaning of the term "grandchildren." Id. at 166.

Here, similar to the trustee in In re Trust of Nelson, Schmidig was uncertain who the successor to the Church of Wood-Ridge was, since it was not clear in Stumm's will. This ambiguity was borne out from the positions taken by the Presbytery, the Church of Moonachie and the Church of Lyndhurst to Schmidig's complaint. Accordingly, it was appropriate and incumbent upon Judge LaConte to ascertain Stumm's probable intent through the evidence presented by the parties.

We must "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). Reviewing courts "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms, 65 N.J. at 484).

13

Review on appeal "does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing State v. Johnson, 42 N.J. 146, 161, (1964)).

Based upon our review of the record, we discern no reason to take issue with Judge LaConte's credibility determination that it was Stumm's probable intent that a local church, such as Church of Moonachie, which congregants of the dissolved Church of Wood-Ridge migrated too, receive the twelve and one-half share of residuary estate to establish an endowment in Herre's name.

We, however, owe no deference to the judge's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted). We review such decisions de novo. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006) (citing Rova Farms, 65 N.J. at 483-84; Manalapan Realty, 140 N.J. at 378).

As mentioned above, the judge rejected the Presbytery's contention that N.J.S.A. 16:11-23, directs that when a local Presbyterian Church dissolves, such as the Church of Wood-Ridge, a bequest to the local church that has not vested

from an estate, "shall thereupon vest in the trustees of such Presbytery." We agree with the judge's ruling.

We begin with a brief discussion of our rules of statutory construction, which were recently summarized as follows:

> The primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We initially consider "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. "We will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit." Tumpson v. Farina, 218 N.J. 450, 467-68 (2014) (citing DiProspero v. Penn, 183 N.J. 477, 493 (2005)). When we do not conclude that the "plain reading of the statutory language is ambiguous, . . . or leads to an absurd result," we refrain from looking at "extrinsic evidence, such as legislative history, committee reports, and contemporaneous construction in search of the Legislature's intent." Tumpson, 218 N.J. at 468 (citing DiProspero, 183 N.J. at 492-93).
>
> [Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 56 (App. Div. 2019).]

In pertinent part, N.J.S.A. 16:11-23, provides

> When any presbytery in this State connected with the United Presbyterian Church in the United States of America heretofore has dissolved or hereafter dissolves any particular local church subject to the ecclesiastical jurisdiction of such presbytery, pursuant to the

15

constitution, laws, usages or customs of the United Presbyterian Church in the United States of America, all the real and personal property of the particular local church and of the congregation connected therewith, whether held by an incorporated board of trustees or otherwise, shall thereupon vest in the trustees of such presbytery, provided the trustees are incorporated, in the same manner as the property was vested in the board of trustees or persons or body holding the same in trust for the particular local church and congregation.

The plain reading of N.J.S.A. 16:11-23, provides that all property held by a local church at the time of its dissolution shall go to the Presbytery. It is silent concerning a devise to the local church after dissolution.

Judge LaConte thoroughly outlined ten reasons why the statute did not apply in this case to entitle the Presbytery to Stumm's residuary estate through the dissolution of the Church of Wood-Ridge. We take no issue with his reasoning. In addition, to read the statute to make the Presbytery a successor of Stumm's residuary estate would produce an unjust result, because as we have determined, the probable intent of Stumm was to provide the bequest for a local church, such as the Church of Moonachie.

While there are no reported decisions specifically interpreting N.J.S.A. 16:11-23, we find support for our conclusion in a century-old Supreme Court decision in Trs. of Presbytery of Jersey City v. Trs. of First Presbyterian Church, 80 N.J.L. 572, 576 (1910), interpreting the act of April 16th, 1908 (Pamph. L.,

p. 623), the precursor to N.J.S.A. 16:11-23, in transferring the property of a dissolving local church to the Presbytery. The Court held that the statute was not an unconstitutional taking because property rights to the local church never vested to it such that "the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest." 80 N.J.L. at 577.

The Court, in turn, determined that parishioners may secede from a local church but they cannot take with them the church property, even if their action is unanimous, because the local church property does not belong to the parishioners but to the church entity. Id. at 579 (citation omitted). The property therefore vests to the Presbytery "by virtue of its general jurisdiction to create, alter and dissolve church congregations" and creates a "qualified right of property in the denomination at large." Id. at 581. The local church's dissolution severed the connection between the denomination and the church, the continued existence of which was conditional to the beneficial enjoinment of the parishioners, thus, they were not direct beneficiaries. Ibid.

Under the same logic, since the Church of Wood-Ridge never held equitable title to Stumm's assets because it was not in existence at the time of Stumm's death, N.J.S.A. 16:11-23 does not convey any part of Stumm's estate

17

to the Presbytery that Stumm still possessed when the Church of Wood-Ridge dissolved.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION