# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2122-23

E.T.[1]

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Submitted April 1, 2025 – Decided April 14, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx1011.

Feeley & LaRocca, LLC, and The Blanco Law Firm, LLC, attorneys for appellant (Pable N. Blanco, of counsel and on the brief; John D. Feeley, on the brief).

---

[1] We use initials to preserve the confidentiality of these proceedings. R. 1:38-3(a)(2).

Gebhardt & Kiefer, PC, attorneys for respondent (Leslie A. Parikh and Susan M. Kennedy, on the brief).

PER CURIAM

Petitioner E.T. appeals from the Board of Trustees (Board) of the Police and Firemen's Retirement System's March 13, 2024 final agency decision (FAD), which denied his application for accidental disability retirement (ADR) benefits pursuant to N.J.S.A. 43:16A-7(a)(1). We affirm.

I.

E.T. worked as a police officer with the Cresskill Police Department (CPD). He was a police officer for almost fifteen years and began working for CPD in 2009. CPD assigned E.T. primarily to patrol.

On September 3, 2015, E.T. responded to a small propeller plane crash, which occurred in an open land area. Moments after E.T. arrived at the scene, he observed a CPD detective had also responded. E.T. parked approximately seventy-five yards away from the crash and ran directly to the crumpled plane. Upon reaching the plane, he did not see the occupants but heard their calls for help and believed they "were in distress." E.T. immediately smelled "an extremely pungent odor of fuel and [saw] smoke." He thought he should "run away" because of the danger the smoking plane presented.

The fire department responded immediately and sprayed the plane with a foam extinguisher. E.T. did not maintain visual or verbal contact with the plane's occupants or "know what the[ fire department members] did." After the fire department and other officers rescued the plane's two occupants, E.T. assisted Emergency Medical Services in moving the occupants, taped off the area, and logged the individuals at the scene. He knew the two occupants were injured in the crash but survived.

E.T. had some knowledge about flying planes because he had taken a flying course in college, but he did not receive plane accident training. CPD's essential functions for a police officer included having to: "[r]un [or] sometimes sprint[] at a high rate of speed"; "[c]limb over [and] . . . jump over obstacles"; "[u]se bodily force to gain entrance or break through barriers," "[s]ecure the scene of a[n] . . . emergency or disaster"; "[s]tand guard at [an] . . . emergency or disaster to prevent . . . loss or injury to persons"; "perform rescue and support functions at the scenes of accidents, emergencies, and disasters"; "[s]ecure and evacuate persons from particular areas"; and "[m]itigate hazardous conditions." Prior to the plane crash, E.T. had performed multiple rescue functions at accident scenes but never one involving a plane. While he had received training

on the emergency removal of victims and performing rescue functions at the scene of accidents, he had not received training on plane extractions.

E.T. experienced anxiety and insomnia after responding to the plane crash and "self-medicate[d] by abusing alcohol." He dutifully reported his alcohol abuse to CPD's Deputy Chief and Chief of Police (Chief) and requested assistance. He attended multiple treatment programs for his alcohol dependency. After E.T. attempted suicide and was hospitalized, he terminated employment with CPD. Doctors diagnosed E.T. with mental health disorders and prescribed medications for his depression, anxiety, and sleep issues.

On December 3, 2018, E.T. applied for ADR benefits. He averred he was disabled and could no longer serve as an officer due to the psychological impacts associated with responding to the plane crash. E.T.'s official last day of employment with CPD was January 1, 2019. On August 12, the Board denied E.T.'s ADR benefits application, finding he: was "not totally and permanently disabled from the performance of [his] regular and assigned job duties"; was "not physically or mentally incapacitated from the performance of [his] usual or other duties that . . . [CPD] was willing to offer"; and did not suffer a traumatic event that "was objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury[,] as [his] disability did not

result from 'direct personal experience of a terrifying or horror-inducing event that involved actual or threatened death or serious injury.'" While the Board found E.T. qualified for deferred retirement benefits, the Board determined he did not meet the criteria for ADR benefits.

On January 8, 2019, after examining E.T., Michael R. Bizzarro, PhD, LCSW, BCD,[2] authored an expert report. Dr. Bizzarro diagnosed E.T. with post-traumatic stress disorder (PTSD) and opined within a reasonable degree of psychological certainty that E.T. could "no longer perform his duties as a [p]olice [o]fficer."

On February 10, 2020, the Board reconsidered its denial of E.T.'s ADR benefit application and reaffirmed its "determination that . . . [E.T.] [was] not totally and permanently disabled from the performance of his regular and assigned job duties as a patrolman." The Board restated its decision that "the event was not objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury," and E.T.'s "disability did not result from [a] 'direct personal experience of a terrifying horror-inducing event

---

[2] As there are multiple spellings of Dr. Bizzarro's name in the record, we have adopted the spelling used in Dr. Bizzarro's expert report.

A-2122-23

that involved actual or threatened death or serious injury, or similarly serious threat to the physical integrity of the member or another person.'"

After E.T. appealed, on May 12, 2020, the Board transferred the matter to the Office of Administrative Law (OAL) as a contested case. The CPD's Chief forwarded a letter supporting E.T.'s disability to the Board. On January 21, 2021, the Administrative Law Judge (ALJ) presided over a hearing at which E.T. and Dr. Bizzarro testified. The ALJ adjourned the matter for further proceedings and supplemental submissions.

On January 10, 2022, while the appeal was pending before the ALJ, the Board again reconsidered the denial of E.T.'s ADR benefits based on a new independent medical examination and report as well as the Medical Review Board's recommendations. The Board modified its prior decisions, finding E.T. was "totally and permanently disabled from the performance of his regular and assigned duties as a result" of the September 3, 2015 incident. Although the Board awarded E.T. ordinary disability retirement benefits effective January 1, 2019, it reaffirmed its denial of E.T.'s ADR benefits application, finding the incident "was not objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury" and again found E.T.'s "disability did not result from [a] 'direct personal experience of a terrifying or

horror-inducing event that involved actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'"  He is currently retired on ordinary disability retirement benefits.

On February 15, 2024, the ALJ issued an initial written decision affirming the Board's denial of E.T.'s ADR benefits.  As the Board had reconsidered its decision and found E.T. "totally and permanently disab[led]" based on his medical diagnoses of PTSD, anxiety, depression, and alcoholism, the ALJ noted that "the parties agreed that medical testimony as to total and permanent disability was not necessary."  The ALJ referenced Dr. Bizzaro's opinion that the symptoms E.T. "was displaying and the self-medicating with the alcohol . . . was based on the [plane] incident," E.T. had experienced "significant trauma that he was trying to cope with and was not very successful," and the "symptoms . . . [were] consistent with the diagnosis of . . . [PTSD]."

The ALJ then considered the facts surrounding the plane crash and E.T.'s training, finding:  E.T. testified that "the physical appearance of a hurt person d[id] not affect him"; "there was no . . . threat to life or injury[,] as the plane was not on fire"; "[he] did not witness the plane crash"; he "d[id] not recall seeing any people in the plane but . . . . remembered hearing them"; and he "was trained in the physical movement and extraction of people in response and

7

rescue emergencies." The ALJ discerned that "[E.T.'s] job description as a police officer encompasse[d] all of the duties he should have been capable of performing at the September 3, 2015 incident." She determined that E.T. had not proven "by a preponderance of the credible evidence that his disability resulted from a direct personal experience of a terrifying or horror-inducing event that involved actual or threatened death or serious injury, or a similarly serious threat to the physical integrity to himself or the other persons in the plane." On March 13, 2024, the Board's FAD adopted the ALJ's initial decision denying E.T.'s ADR application.

On appeal, E.T. contends the Board's FAD denying his ADR benefits application warrants reversal because he sufficiently demonstrated his involvement in an accident that meets the definition of a "traumatic event" under the test outlined in Richardson v. Board of Trustees, Police and Firemen's Retirement System, 192 N.J. 189 (2007), and Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29 (2008).

II.

Our review of an agency determination is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). An appellate court "may not substitute its own judgment for the agency's, even though the court might

have reached a different result." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)) (internal quotation marks omitted). An administrative agency's determination "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 418 (2018) (quoting Russo, 206 N.J. at 27).

An appellate court is not, however, bound by an agency's statutory interpretation or other legal determinations, which are reviewed de novo. Mount, 233 N.J. at 418-19. Even so, "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes." Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 55 (App. Div. 2019) (quoting Piatt, 443 N.J. Super. at 99).

To qualify for ADR benefits, an employee must demonstrate he or she "is permanently and totally disabled as a direct result of a traumatic event occurring

during and as a result of the performance of his [or her] regular or assigned duties." Mount, 233 N.J. at 419 (quoting N.J.S.A. 43:16A-7(a)(1)). ADR benefits "entitle[] a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Thompson v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 449 N.J. Super. 478, 484 (App. Div. 2017) (quoting Patterson, 194 N.J. at 43).

"[A] traumatic event is . . . an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Richardson, 192 N.J. at 212. To establish entitlement to ADR benefits, a member must prove:

    1. that he [or she] is permanently and totally disabled;

    2. as a direct result of a traumatic event that is

        a. identifiable as to time and place,

        b. undesigned and unexpected, and

        c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

    3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

    4. that the disability was not the result of the member's willful negligence; and

5.    that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Mount, 233 N.J. at 421 (quoting Richardson, 192 N.J at 212-13).]

See also N.J.S.A. 43:16A-7(a)(1). Our courts have concluded that the words "traumatic event" and "direct result" in the statutes governing retirement systems reflect the Legislature's intent "to make the granting of an accidental disability pension more difficult." Kasper v. Bd. of Trs. of the Tchrs.' Pension & Annuity Fund, 164 N.J. 564, 576 (2000).

Our Supreme Court has recognized that "coverage for mental injuries is not disputed." Patterson, 194 N.J. at 44. "The only issue is whether such an injury will be recognized as a basis for accidental disability if it is caused by an exclusively psychological trauma." Id. at 44-45. The Supreme Court held that to substantiate a covered traumatic mental injury, the petitioner is required to demonstrate "that the disability resulted from a 'direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'" Mount, 233 N.J. at 424 (quoting Patterson, 194 N.J. at 34). This requirement "achieve[s] the important assurance that the traumatic event posited as the basis for an accidental disability pension is not

11

inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." Ibid. (quoting Patterson, 194 N.J. at 34). Our Supreme Court provided "examples of retirement system members who 'could vault the traumatic event threshold,' . . . cit[ing] 'a permanently mentally disabled policeman who sees [their] partner shot; a teacher who is held hostage by a student; and a government lawyer used as a shield by a defendant.'" Id. at 423 (quoting Patterson, 194 N.J. at 50).

## III.

We begin by recognizing that it is undisputed E.T. immediately responded to the plane crash, ran directly to the plane to assist the victims while cognizant of potential danger, and tried to "gain access to the [crumpled] plane." Some months after the accident, E.T. reported his alcohol abuse to CPD and sought assistance. Prior to terminating his employment, E.T. remained dedicated "to get[ting] help" and addressing his "need to abuse . . . alcohol." E.T. also steadfastly tried to return to work at CPD but found his mental disability prevented him from working in law enforcement.

While we concur with E.T.'s contention "that a psychiatric injury can result from a 'traumatic event' and so qualify for . . . [ADR benefits]," we discern no error in the Board's FAD adopting the ALJ's determination that E.T.'s

12

disability was not a result of a "direct personal experience of a terrifying or horror-inducing event that involve[d] actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person." Mount, 233 N.J. at 407, 424 (quoting Patterson, 194 N.J. at 34). It is well established that to qualify for ADR benefits, E.T. had to establish "a qualifying traumatic event" that "in fact, caused him to be permanently and totally disabled." Russo, 206 N.J. at 32 (emphasis omitted). Irrefutably, E.T.'s experience at the plane crash site entailed a real degree of peril because the plane was leaking fuel and smoking, which required the fire department to use foam extinguishers. The fact that a dangerous event occurred is not dispositive on its own, and the Board correctly considered the totality of facts related to the crash as found by the ALJ.

We reject E.T.'s argument that the Board committed a legal error in considering his training and the nature of the event relative to his responsibilities as a patrolman. As the ALJ found and the Board adopted, E.T. admitted that he: did not witness the plane crash; did not extract the occupants from the plane; did not observe the plane on fire; was not ordered to enter the plane; and was aware the plane's occupants survived. The ALJ appropriately considered these facts in reviewing whether E.T.'s "mental injury precipitated by an exclusive mental

stressor" was a direct result of "a terrifying or horror-inducing event." Patterson, 194 N.J. at 50. The record further supports the Board's adoption of the ALJ's determination that E.T.'s "job description as a police officer encompasse[d] all of the duties he should have been capable of performing at the September 3, 2015 incident." Thus, the Board's consideration of the totality of facts surrounding the plane crash and E.T.'s training and experience in determining whether he experienced a qualifying traumatic event that met the "'direct result' standard" was not error. Russo, 206 N.J. at 33.

In sum, having considered E.T.'s arguments in light of the record and applicable legal standards, we affirm the Board's FAD denying his claim for ADR benefits. Under the present facts, substantial credible evidence in the record supports the Board's adoption of the ALJ's determination that E.T.'s disability did not arise "as a direct result of a traumatic event." Mount, 233 N.J. at 419 (quoting N.J.S.A. 43:16A-7(a)(1)). The Board's decision was not arbitrary, capricious, or unreasonable and did not constitute a mistake of law. Therefore, we discern no reason to disturb the Board's FAD affirming the denial of E.T.'s ADR benefits.

To the extent that we have not addressed E.T.'s remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division