*A*.2d 275 (2001); *SASCO 1997 NI, LLC v. Zudkewich,* 166 *N.J.* 579, 596, 767 *A.*2d 469 (2001).

The issue of retroactivity raises questions which have not been addressed by the parties. We leave this issue to the Law Division judge, in the first instance.

Affirmed in part; reversed in part, and remanded.

821 A.2d 515

STATE OF NEW JERSEY IN THE INTEREST
OF D.K., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 24, 2003—Decided May 1, 2003.

Before Judges HAVEY, A.A. RODRÍGUEZ and PAYNE.

*Yvonne Smith Segars*, Public Defender, attorney for appellant (*Stephen W. Kirsch*, Assistant Deputy Public Defender, of counsel and on the brief).

*John Kaye,* Monmouth County Prosecutor, attorney for respondent (*Kathleen Bycsek,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

Defendant D.K., a juvenile, was charged with possession of marijuana, *N.J.S.A.* 2C:35–10a(4), hindering apprehension, *N.J.S.A.* 2C:29–3a(3), and tampering with evidence, *N.J.S.A.* 2C:28–6a(1) after a car in which he was riding at 2:30 a.m. on November 25, 2001 was stopped by the police because it had a tinted plastic cover over the rear license plate, rendering that license plate temporarily unreadable. He was adjudicated guilty of all charges. As a disposition, the court imposed an aggregate term of one year's probation on the marijuana and tampering charges. The hindering charge was merged and dismissed.

Defendant has appealed, arguing that the arresting police officer did not have a reasonable and articulable suspicion that a motor vehicle offense had been committed at the time of the stop and thus the fruits of that stop should have been suppressed. Significantly, defendant does not otherwise challenge the validity of the search for the marijuana, detected by the odor emanating from the driver's side window of the stopped car. The marijuana was found by the police in defendant's mouth as he sought to dispose of the evidence by eating it.

At the suppression hearing conducted in the matter, the parties agreed that the sole issue before the court was the legality of the stop of the vehicle in which defendant was a passenger. The arresting officer, Patrolman Dan Mason, testified in that regard that he had pulled up in his patrol car behind a Camaro stopped at the intersection of Highway 34 and Belmar Boulevard in Wall Township. Although the intersection was well lit by street lights, the officer was unable to read the Camaro's rear license plate, which was partially obscured by a tinted plastic cover. After the Camaro left the intersection, the road became darker. At that

time, by use of his car's spotlight, Mason was able to decipher the entire plate. Nonetheless, believing that the presence of the tinted plastic constituted a motor vehicle violation, Mason then initiated a traffic stop and charged the driver with a violation of *N.J.S.A.* 39:3–77, which prohibits the use of "any device, part or accessory which changes or is intended to change the design or designed performance of any device or equipment required to be approved." The choice of this charge, Mason testified, was dictated by the instruction of a local municipal court judge, who found it applicable to cases involving tinted windows.[1] Mason testified that he also considered charging the driver with a violation of *N.J.S.A.* 39:3–33, which prohibits driving a motor vehicle that has a license plate frame "that conceals or otherwise obscures any part of any marking imprinted upon the vehicle's registration plate." However, he did not charge this additional violation as the result of the driver's cooperative behavior.

Following Mason's testimony, the trial court denied defendant's motion for suppression. In doing so, the court recognized that a stop of a motor vehicle is constitutionally permissible if there is a reasonable and articulable suspicion that a motor vehicle violation has taken place. After reviewing the evidence presented, the judge found Mason's testimony to have been credible and the requisite suspicion of a motor vehicle violation sufficient to justify the stop to have been demonstrated. We affirm.[2]

Defendant contends on appeal that the court's factual determination that the arresting officer regarded the license plate to be illegible lacked support in the evidence presented, arguing that because the license plate was eventually read, it could not have been obscured, and that the stop was therefore factually unjustified. We reject this contention for several reasons.

---

[1] In fact, *N.J.S.A.* 39:3–74 applies specifically to tinted windows.

[2] There is no suggestion in this case that the stop occurred as the result of illegal profiling.

First, we note that Mason charged the driver with a violation of *N.J.S.A.* 39:3–77, which prohibits the use of a part or accessory that changes the designed performance of approved equipment such as a license plate. *See N.J.S.A.* 39:3–33.9 (setting license plate standards). Thus, to establish a factual basis for the violation charged, there needed only to be evidence of an alteration in the "designed performance" of the plate. Its tinted plastic covering could meet this qualification as a matter of fact, if the plastic rendered the plate less readable. We note in this regard that the use of glass, plastic or a similar material to cover a license plate is specifically prohibited by *N.J.A.C.* 13:20–32.4(b)6 (establishing public inspection facility standards) and 13:20–33.4(b)6 (establishing private inspection facility standards). We infer that the prohibition was formulated specifically to address the need for license plate legibility in policing activities and, more recently, at toll barriers employing scanning and photographic devices.

Second, we disagree with defendant's construction of the word "obscure." The term does not mean, as defendant suggests, to make an object such as a license plate wholly undecipherable but, reasonably construed, means merely to make it less legible. That the definition that we have chosen is correct is demonstrated by the language of *N.J.S.A.* 39:3–33, the additional charge considered by Mason, which prohibits both devices that "conceal" and those that "otherwise obscure" license plate markings. The alternative phrasing would be unnecessary if "obscure" were accorded the same meaning as "conceal," as defendant suggests.

Third, we find the trial court's determination that the license plate was less readable and thus obscured to have been adequately supported factually. Mason, whom the court found to be credible, testified that he could not read the Camaro's entire plate even at a well-lit intersection because of the tint and the glare arising from the license plate's cover. The court accepted this testimony and based his ruling on it. We find no basis for disturbing the court's conclusion. *State v. Locurto,* 157 *N.J.* 463, 470–71, 724 *A.*2d 234 (1999).

Defendant next argues that the fact that the license plate was obscured did not give rise to a reasonable and articulable suspicion that a motor vehicle violation had occurred. Again, we disagree.

"It is firmly established that a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." *State v. Smith*, 306 *N.J.Super.* 370, 380 [703 *A.2d* 954] (App.Div.1997) (citing *Delaware v. Prouse*, 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.2d* 660, 673 (1979); *State v. Murphy*, 238 *N.J.Super.* 546, 554 [570 *A.2d* 451] (App.Div.1990)). To satisfy the articulable and reasonable suspicion standard, the State is not required to prove that the suspected motor-vehicle violation occurred. *State v. Williamson*, 138 *N.J.* 302, 304 [650 *A.2d* 348] (1994). [*Locurto, supra*, 157 *N.J.* at 470, 724 *A.2d* 234.]

In the present case, as we have previously suggested, violations of *N.J.S.A.* 39:3–33 and 39:3–77 reasonably could have been found to exist as the result of the presence of a tinted cover over the Camaro's plate. The perception of those violations by the arresting officer, we find, provided a reasonable and articulable basis for his motor vehicle stop. *See, e.g., State v. Campbell*, 53 *N.J.* 230, 235, 250 *A.2d* 1 (1969) (noting that an obscured license plate on a car being driven in the early morning hours could justify a stop); *State v. Murphy*, 238 *N.J.Super.* 546, 570 *A.2d* 451 (App.Div.1990) (finding a stop justified by observation of a license plate stuck on a diagonal in rear window); *People v. Watkins*, 19 *Ill.2d* 11, 166 *N.E.2d* 433, 437, *cert. denied*, 364 *U.S.* 833, 81 *S.Ct.* 57, 5 *L.Ed.2d* 59 (1960); *People v. Esposito*, 18 *Ill.2d* 104, 163 *N.E.2d* 487, 488 (1959). *Cf. State v. Hock*, 54 *N.J.* 526, 257 *A.2d* 699 (1969) (car driven with noisy muffler at 3:00 a.m.), *cert. denied*, 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.2d* 797 (1970); *State v. Cohen*, 347 *N.J.Super.* 375, 790 *A.2d* 202 (App.Div.2002)(tinted windows); *State v. Jones*, 122 *N.J.Super.* 585, 301 *A.2d* 185 (Cty.Dist.Ct.1973)(studded tires in use in August).

This is so even if it had been ultimately determined that no motor vehicle violation occurred. *Cohen, supra*, 347 *N.J.Super.* at 380, 790 *A.2d* 202 ("[I]t matters not whether the equipment used violates *N.J.S.A.* 39:3–74, because the fact that a defendant is later found not guilty does not denigrate the propriety of the initial stop

so long as it is based upon a reasonable articulable suspicion that a motor vehicle violation has occurred."); *State v. Williamson,* 138 *N.J.* 302, 304, 650 *A.*2d 348 (1994); *State v. Murphy,* 238 *N.J.Super.* 546, 553–54, 570 *A.*2d 451 (App.Div.1990); *State v. Nugent,* 125 *N.J.Super.* 528, 534, 312 *A.*2d 158 (App.Div.1973). However, in the present case, the applicability of *N.J.S.A.* 39:3–77 was apparently conceded by the driver, who pled guilty to the motor vehicle offense and paid the requisite fine.

▮ Moreover, "if a stop for a motor vehicle violation is reasonable, the police do not have to show an independent basis for detaining the passengers, unless the detention goes beyond what is incident to a brief motor vehicle stop." *State v. Hickman,* 335 *N.J.Super.* 623, 634, 763 *A.*2d 330 (App.Div.2000)(*citing People v. Bell,* 43 *Cal.App.* 4th 754, 51 *Cal.Rptr.*2d 115, 119 (1996)). Thus, defendant's incidental detention as the result of the stop of the car's driver is unchallengeable.

As a consequence of the foregoing analysis, defendant's conviction is affirmed.