**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4258-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAURA I. MARTINEZ,

    Defendant-Appellant.

_____

Submitted September 7, 2021 – Decided September 20, 2021

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 19-08-1037.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of her motion to suppress evidence seized without a warrant during a motor vehicle stop, defendant entered a negotiated guilty plea to third-degree possession of a controlled dangerous substance (CDS), heroin, N.J.S.A. 2C:35-10(a)(1). She was sentenced to two years of non-custodial probation.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> AS WAS THE BASIS FOR SUPPRESSION IN STATE V. ROMAN-ROSADO, 462 N.J. SUPER. 183 (APP. DIV. 2020), HERE, TOO, THE POLICE LACKED REASONABLE SUSPICION OF A TRAFFIC VIOLATION TO STOP DEFENDANT'S VEHICLE BASED ON A MINOR OBSTRUCTION OF THE LICENSE PLATE THAT IN NO WAY IMPACTED THE OFFICER'S ABILITY TO READ THE PLATE.
>
> POINT II
>
> EVEN IF THE INITIAL STOP WERE LAWFUL, UNLAWFULLY ORDERING DEFENDANT OUT OF THE VEHICLE AND UNLAWFULLY REQUESTING HER CONSENT TO SEARCH THE VEHICLE – BOTH OF WHICH WERE FOUND BY THE TRIAL COURT – TAINTED THE LATER SEARCH THAT WAS BASED ON THE SUBSEQUENT "PLAIN SMELL" OF MARIJUANA.

Because we agree the motor vehicle stop lacked the requisite reasonable suspicion of a traffic violation, we reverse.

A-4258-19

We glean the following facts from the suppression hearing conducted on December 13, 2019, during which the State produced Patrolman Joseph Licata as its sole witness.

According to Licata, at approximately 10:00 p.m. on January 2, 2019, while employed as a patrolman in the Pemberton Borough Police Department, he was conducting his regular "area check" at "the 198 Pine Meadows Apartment Complex." The department had received "complaints" about "drug[] activity in the area," so Licata was tasked with checking the complex during his "one-man" nightly patrol. During his area checks, he would drive through the complex parking lot with his "overhead spotlights on" to look for signs of illegal activity. After inspecting the parking lot, Licata would position his vehicle in a dirt area near the lot's exit and "monitor traffic" on Route 530.

During his January 2 area check, Licata "observed a black Dodge Caravan" running without its lights on in the complex parking lot. Initially, Licata took no action towards the vehicle and simply continued his traffic monitoring activity near the exit. However, when the Dodge Caravan pulled out of its "parking spot" and drove past Licata's vehicle, the patrolman observed "a little obstruction on the bottom" of the vehicle's "rear license plate" by the frame surrounding the plate. Licata testified that based on his observation, he had a

3                                                                    A-4258-19

"reasonable suspicion" the license plate obstruction violated N.J.S.A. 39:3-33, so he followed the vehicle and "conducted a motor vehicle stop" in a Burger King parking lot.

During his testimony, Licata could not recall what portion of the plate was obstructed but acknowledged he had no trouble reading the tag number even prior to pulling the vehicle over. His police report only noted the plate was unclear. Although the patrol car's motor vehicle recorder (MVR) recorded the stop, the recording did not capture a clear image of the license plate or the frame,[1] which Licata described as "a normal dealer-issued" frame. On cross-examination, Licata also acknowledged he was suspicious of the vehicle because (1) he did not recognize it as one of the cars usually in the parking lot at night, and (2) the vehicle quickly exited soon after his arrival. However, he later clarified that he could not have stopped the vehicle based solely on those observations.

After the vehicle stopped, Licata approached the passenger side for safety reasons. Defendant was seated in the front passenger seat. Licata asked the driver, James Bowker, for his "license, registration, and insurance," but Bowker only handed Licata a New Jersey identification card, "which [was] not a valid

---

[1] The MVR was played for the motion judge during the hearing.

driver's license." During this exchange, Licata learned that defendant was the vehicle's registered owner, and verified that she had a valid driver's license and insurance. Licata also observed a third occupant, Ameer Wimberly, seated "in the right rear seat" but was unable to see inside clearly, because "[t]he back window was tinted" and could not be lowered due to a malfunction.

At that juncture, Licata asked defendant to step out of the vehicle and defendant complied. Licata testified he "just wanted to speak with [her]" for "safety" reasons since she was the registered owner of the vehicle. During their conversation, Licata asked defendant "where she was coming from" that evening and defendant identified an individual she was visiting at the apartment complex. Licata recognized the name as "a person of interest" to the department "for drug-related offenses." Licata also testified defendant appeared "nervous," avoided "eye contact," and "was very evasive in the way she was speaking."

As a result, Licata asked defendant for permission to search the vehicle and defendant consented to the search. Licata then headed to the driver's side of the vehicle and asked the driver, Bowker, to step out of the vehicle. When Bowker opened the door, Licata smelled the odor of raw marijuana emanating from the vehicle. As Licata led Bowker to the rear of the vehicle for questioning, a Pemberton Township police officer arrived to assist. Licata then returned to

the vehicle and asked Wimberly to step out. When Wimberly opened the rear door, Licata again smelled raw marijuana emanating from the vehicle. Next, Licata went back to defendant, advised her of her <u>Miranda</u>[2] rights, and reviewed the Pemberton Borough consent to search form with her, specifically advising her of her right to refuse consent to the search. Defendant again consented to the vehicle search and subsequently signed the form.

During the search, Licata discovered a "decorative Christmas bag" in a storage compartment beneath the rear seats. As he picked up the bag, "[he] could smell the odor of raw marijuana emanating from the bag." Inside the bag, Licata found "a large quantity of marijuana." As a result, all three occupants of the vehicle were arrested. During the search incident to arrest, Licata discovered a "black cloth bag" containing "heroin, pills, and another brown substance" on defendant's person. Licata subsequently issued criminal complaints and motor vehicle summonses in connection with the stop, including a violation of N.J.S.A. 39:3-33 for an obstructed license plate.

Following the hearing, the judge denied defendant's suppression motion. In a written opinion issued January 24, 2020, initially, the judge found "Licata to be credible" and made factual findings consistent with his testimony. Next,

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

the judge determined the motor vehicle stop was valid because Licata "believed the license plate frame violated N.J.S.A. 39:3-33," which prohibits the operation of a motor vehicle with "a license plate frame or identification marker holder that conceals or otherwise obscures any part of any marking imprinted upon the vehicle's registration plate." The judge noted "[l]icense plate frames are not per se illegal, and simply having a frame on a vehicle is not a reason for a traffic stop. However, license plate frames that conceal or obscure any markings imprinted on the license plate are prohibited because they can hinder identification of the driver."

Citing State v. Cohen, 347 N.J. Super. 375 (App. Div. 2002), the judge pointed out that "[a]n officer can lawfully initiate a traffic stop when he reasonably believes that he observed a traffic violation, even if it is later determined that no violation occurred." Thus, the judge concluded, "the initial traffic stop was valid because it was based on a reasonable and articulable suspicion that a motor vehicle offense had occurred." See State v. Locurto, 157 N.J. 463, 470 (1999) ("[A] police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997))).

The judge also found "[o]nce Officer Licata determined . . . there was a reasonable and articulable suspicion of a traffic violation and that Mr. Bowker was driving without a license, it became lawful, and necessary to require Mr. Bowker to exit the vehicle during the traffic stop." See Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (holding that ordering the driver to get out of a lawfully stopped vehicle is constitutionally permissible); State v. Smith, 134 N.J. 599, 611 (1994) ("[T]he Mimms test, as applied to drivers satisfies the New Jersey Constitution as well.").

Further, the judge found, as Bowker exited the vehicle, "probable cause of criminal activity materialized from unforeseeable and spontaneous circumstances when Officer Licata detected the odor of raw marijuana emanating from the vehicle during a lawful motor vehicle stop." See State v. Nishina, 175 N.J. 502, 515-16 (2003) ("New Jersey courts have recognized that the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'" (alteration in original) (quoting State v. Vanderveer, 285 N.J. Super. 475, 479 (App.Div.1995))).

According to the judge, "[b]ased on that probable cause, [Licata] then lawfully searched the vehicle subject to the automobile exception to the warrant

A-4258-19

requirement." See State v. Witt, 223 N.J. 409, 447 (2015) (holding the automobile exception under the New Jersey Constitution "authorize[s] the warrantless search of an automobile only when the police have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous").

However, the judge also determined because the occupants complied with Licata's requests and made no furtive movements prior to defendant's removal from the vehicle, "it was not lawful to remove [defendant] from the vehicle because the circumstances did not present the need for heightened caution." See State v. Bacome, 228 N.J. 94, 107 (2017) ("[O]fficers may remove passengers only when the circumstances present reason for heightened caution."). Additionally, the judge determined "it was not lawful to request [defendant's] consent to search" the vehicle because Licata "had no articulable suspicion of criminal activity unrelated to the purpose of the car stop at the time of th[e] request." The judge noted Licata requested defendant's consent "before he detected the odor of marijuana from inside the vehicle." See State v. Carty, 170 N.J. 632, 646 (2002) (invalidating "suspicionless consent searches following valid motor vehicle stops"). This appeal followed.

On appeal, defendant argues the judge erred in "rul[ing] that a nonspecific 'little obstruction on the bottom' of the plate could constitute a violation of N.J.S.A. 39:3-33" to support the motor vehicle stop in light of "this [c]ourt's recent decision in State v. Roman-Rosado, 462 N.J. Super. 183 (App. Div. 2020), [aff'd as modified by sub nom. State v. Carter, __ N.J. __, __ (2021)]." Prior to our decision in Roman-Rosado, State ex rel. D.K., 360 N.J. Super. 49 (App. Div. 2003) was "the only published opinion interpreting N.J.S.A. 39:3-33." Roman-Rosado, 462 N.J. Super. at 198. In D.K., we held the word obscure in N.J.S.A. 39:3-33 "reasonably construed, means merely to make [the license plate] less legible." 360 N.J. Super. at 53. We inferred the statute "was formulated specifically to address the need for license plate legibility in policing activities." Ibid. Thus, under D.K.'s legibility standard, a license plate frame obscuring a portion of the plate without making the plate less readable, did not violate N.J.S.A. 39:3-33.

We reached a similar conclusion in Roman-Rosado, where police officers predicated a motor vehicle stop of the defendant's car on the words "Garden State" on the rear license plate being partially covered. 462 N.J. Super. at 190. Although the officer estimated the license plate frame covered about ten or fifteen percent of the bottom of the letters on the plate, he admitted he could

clearly recognize the words "Garden State." Ibid. In invalidating the trial judge's interpretation of N.J.S.A. 39:3-33 and, in turn, the motor vehicle stop upon which it was premised, we concluded:

> Based on our common understanding of the verbs "conceal" and "obscure," coupled with our prior interpretation of the N.J.S.A. 39:3-33 in D.K., a license plate only violates N.J.S.A. 39:3-33 if any part of the license plate's marking is concealed or obscured so as to make it less legible. By "less legible," we mean an inability to discern critical identifying information imprinted on the license plate. Otherwise, this would cause an absurd result where a law enforcement officer, as was the situation here, has the unfettered right to stop a motorist where there is the slightest, and candidly insignificant, covering of "Garden State" on a driver's rear license plate.
>
> . . . We cannot envision the Legislature intended a slight covering of a license plate's words to form the basis for the stop of an otherwise lawful driver when it enacted N.J.S.A. 39:3-33. If such was the case, the statute would have used the word "covers" or "obstructs" instead of "conceals or otherwise obscures," where it states, "conceals or otherwise obscures any part of any marking imprinted upon the vehicle's registration plate."
>
> [Id. at 199.]

Thereafter, our Supreme Court granted certification and issued a consolidated opinion in Roman-Rosado and another case, State v. Carter, which also involved an interpretation of N.J.S.A. 39:3-33. See Carter, __ N.J. at __

11

(slip op. at 4). In the <u>Carter</u> case, police officers stopped Carter's vehicle for a suspected violation of N.J.S.A. 39:3-33 because the words "Garden State" were covered on the car's license plate. <u>Id.</u> at __ (slip op. at 6). The trial court denied the defendant's suppression motion, finding the officer had reasonable suspicion Carter was operating his vehicle in violation of N.J.S.A. 39:3-33 because the words "Garden State" on the license plate were covered. <u>Id.</u> at __ (slip op. at 7). This court affirmed, finding that N.J.S.A. 39:3-33 barred even the partial concealment of any marking on the license plate, including the words "Garden State." <u>Id.</u> at __ (slip op. at 7-8).

In its consolidated opinion, the Supreme Court held a broad interpretation of N.J.S.A. 39:3-33 would raise "serious constitutional concerns." <u>Id.</u> at __ (slip op. at 26). The Court stated that the statute

> requires that all markings on a license plate be legible or identifiable. That interpretation is consistent with the plain meaning of the statute's wording. If a license plate frame or holder conceals or obscures a marking such that a person cannot reasonably identify or discern the imprinted information, the driver would be in violation of the law.
>
> In other words, a frame cannot cover any of the plate's features to the point that a person cannot reasonably identify a marking. So, for example, if even a part of a single registration letter or number on a license plate is covered and not legible, the statute would apply because each of those characters is a

separate marking. If "Garden State," "New Jersey," or some other phrase is covered to the point that the phrase cannot be identified, the law would likewise apply. But if those phrases were partly covered yet still recognizable, there would be no violation.

[Id. at __ (slip op. at 29) (citations omitted).]

The Court held that Roman-Rosado did not violate N.J.S.A. 39:3-33 because only ten or fifteen percent of the words "Garden State" were obstructed, and the officer "conceded he could clearly identify the phrase on the license plate." Id. at __ (slip op. at 30). The Court found, however, that the officer had the right to stop Carter because it was undisputed that the words "Garden State" were entirely covered. Ibid. Thus, the plate violated the statute. Ibid.

The Court also rejected the State's contention that even if Roman-Rosado did not violate N.J.S.A. 39:3-33 and the officer's interpretation of the statute was mistaken, the mistake was reasonable and the stop lawful. Id. at __ (slip op. at 34). In so doing, the Court refused to adopt the holding of the United States Supreme Court in Heien v. North Carolina, 574 U.S. 54 (2014). Id. at __ (slip op. at 34-46).

In Heien, the Court held that a police officer's mistake of law can provide "reasonable suspicion needed to justify a traffic stop under the Fourth Amendment." Id. at __ (slip op. at 34) (citing Heien, 574 U.S. at 57). However,

13

our Supreme Court declined to adopt a reasonable mistake of law exception under the New Jersey Constitution. Id. at __ (slip op. at 46). The Court explained:

> An officer's reasonable but mistaken interpretation of a statute cannot change the fact that the law does not criminalize particular conduct. In other words, if a law does not establish an offense altogether, the reasonable nature of an officer's mistake cannot transform an officer's error into reasonable suspicion that a crime has been committed. If officers could search and seize a person under those circumstances, reasonable, good faith errors would erode individual rights that the State Constitution guarantees.
>
> [Id. at __ (slip op. at 44).]

Here, Licata never suggested he had any trouble reading defendant's license plate; in fact, he called in the license plate number before he stopped the vehicle. During his testimony, he stated he observed "a little obstruction on the bottom" of the vehicle's "rear license plate" by the frame surrounding the plate, but he could not recall what was obstructed. The judge found Licata credible and made factual findings consistent with his testimony. "When an appellate court reviews a trial court's decision on a motion to suppress, the reviewing court defers to the trial court's factual findings, upholding them 'so long as sufficient credible evidence in the record supports those findings.'" In Interest of J.A., 233

14

N.J. 432, 445 (2018) (quoting State v. Gonzalez, 227 N.J. 77, 101 (2016)).  Here, we are satisfied the judge's factual findings are amply supported by the record.

However, Licata's description of his observation was akin to the partial obstruction condemned in Roman-Rosado.  Therefore, Licata lacked reasonable suspicion a violation of N.J.S.A. 39:3-33 had occurred.  Because we conclude the judge erred in interpreting N.J.S.A. 39:3-33 and, in turn, determining that Licata had a reasonable basis for stopping defendant's car for a violation of the statute, the subsequent search of defendant's person and car was unconstitutional.  See State v. Elders, 192 N.J. 224, 252 (2007) (Rivera-Soto, J., dissenting) ("[W]e have repeatedly and uniformly held that '[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" (second alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995))).

The evidence seized from that unconstitutional search was the fruit of the poisonous tree and should have been suppressed.  See State v. O'Neill, 193 N.J. 148, 171 n.13 (2007) ("The fruit-of-the-poisonous-tree doctrine denies the prosecution the use of derivative evidence obtained as a result of a Fourth . . . Amendment violation.").  We therefore reverse and remand to afford defendant

15

an opportunity to withdraw her guilty plea, which was based on the illegally obtained evidence, and have the judgment of conviction vacated.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION